1

1        IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA
2
   _____
3
   UNITED STATES OF AMERICA
4
                        Plaintiff
5
        vs.          Criminal Action No. 05-01 Erie
6
   JAWUAN DUPREE LYONS
7
                        Defendant
8  _____

9
                   PROCEEDINGS
10
        Transcript of Sentence commencing on Wednesday,
11  October 5, 2005, United States District Court,
    Erie, Pennsylvania, before Honorable Maurice B. Cohill, Jr.,
12  District Judge.

13  APPEARANCES:

14  For the Government:      US Attorney's Office
                        By:  Christian Trabold, Esq.
15
    For the Defendant:      Federal Public Defender
16                      By:  Thomas Patton, Esq.

17                 Reported by:
                   Michael D. Powers, RMR
18                  Official Court Reporter
                   Room 5335 USPO & Courthouse
19                  Pittsburgh, Pennsylvania 15219
                   (412) 208-7572
20

21

22  Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-aided transcription.
23

24

25


                                    2


1               I N D E X

2  DEFENDANT WITNESS    DIRECT  CROSS  REDIRECT  RECROSS

3  ROBERT J. BLAKELY

4   By Mr. Patton      5
    By Mr. Trabold         12
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1       P R O C E E D I N G S

2   (Court convened on Wednesday, October 5, 2005, at 10:05 a.m.)

3       THE COURT:  Good morning.  Be seated, please.

4       MR. TRABOLD:  Good morning, Your Honor.

5       MR. PATTON:  Good morning, Your Honor.

6       THE COURT:  This is the time set for the sentencing

7   of Jawuan Dupree Lyons.

8       We note that Mr. Lyons and his attorney have signed

9   the notice indicating they received and reviewed the

10  presentence report.  We'll make the presentence report part

11  of the record under seal.  If an appeal should be taken and

12  counsel needs that presentence report for reference, of

13  course, it will be made available to him.

14         There has been no information withheld from the

15  defendant which was given to the Court.

16         In the wake of the recent decision by the United

17  States Supreme Court in United States against Booker, the

18  Sentencing Guidelines are advisory only but, nevertheless, we

19  are obligated to consult with them accepting the fact that

20  they do stand now in an advisory capacity to the Court.

21         So, it's necessary, of course, that the Court

22  address objections to the presentence report if any are filed

23  and resolve any factual disputes regarding the guidelines on

24  the record just as we did before.  This is because we can't

25  reasonably consider the guideline range, as we must under

4

1  Booker, until we've properly determined what that range is.

2         And in calculating the applicable guideline range

3  prescribed by the guidelines, we have to consider the factors

4    that are set forth in 18, United States Code,

5    Section 3553(a).

6          The government has not filed any objections to the

7    presentence report.  The defendant filed objections

8    presenting several arguments objecting to paragraph 33 of the

9    presentence report which assigned three criminal history

10   points for the defendant's adjudication for receiving stolen

11   property, terroristic threats and disorderly conduct.

12          We note that the Probation Officer agrees with

13   defendant's first argument that paragraph 33 of the

14   presentence report incorrectly assigned three criminal

15   history points for that adjudication of receiving stolen

16   property, terroristic threats and disorderly conduct, since

17   he was not convicted as an adult in this case.

18          He should, instead, have received two criminal

19   history points, and this correction is reflected in the

20   addendum to the presentence report.

21          I don't think the government has any argument on

22   that issue.

23          MR. TRABOLD:  I think it's certainly correct that

24   it should not be three.  Obviously, the dispute is whether it

25   should be two or nothing.

5

1          THE COURT:  Then, the defendant further objects to

2   paragraph 33 as corrected which assigns two points, arguing

3   that his placement at Glen Mills School is not a sentence of

4   confinement pursuant to Sentencing Guideline

5   Section 4A1.2(d)(2) and under United States against Davis,

6   29 F.3d 930, Third Circuit, 1991.

7          So, we will hear your arguments on that,

8   Mr. Patton.

9          MR. PATTON:  Your Honor, I do have some brief

10   testimony just to get the factual basis established for Glen

11   Mills.

12          THE COURT:  Sure.

13          MR. PATTON:  And we call Mr. Robert J. Blakely.

14          THE COURT:  Would you come forward and be sworn,

15   please?

16                    * * * * *

17          ROBERT J. BLAKELY, having first been duly sworn,

18   testified as follows:

19          THE COURT:  Would you have a seat up here, please,

20  give us your name and spell your last name?

21      THE WITNESS:  My name is Robert J. Blakely,

22  B-l-a-k-e-l-y.  I'm the Chief Juvenile Probation Officer for

23  Erie County.

24      THE COURT:  Thank you.

25          DIRECT EXAMINATION


                    Blakely - Direct              6


1  BY MR. PATTON:

2  Q    Mr. Blakely, how long have you worked for Erie County

3  Juvenile Probation?

4  A    I worked for the Juvenile Probation Department since

5  1981, which would be twenty-four years.

6  Q    In those twenty-four years, have you become familiar

7  with the Glen Mills School?

8  A    That's correct.

9  Q    Could you give us just a brief summary of what the

10  Glen Mills School is?

11  A    Glen Mills School is a residential facility located

12  outside of Philadelphia, Pennsylvania.  They take adjudicated

13  delinquent youth between the ages of fifteen and eighteen.

14  In continuum of juvenile placement, they are probably a

15  mid-range in terms of, I don't want to say severity, but in

16  terms of structure.

17       It is not a locked facility.  It is a staff-secure

18  facility.  The doors are not locked.  The kids are not

19  allowed to just walk off the property.  The staff would stop

20  that.  But, it is not a locked facility.

21  Q   Does Erie County Adult Probation use the Glen Mills

22  School?

23  A   Yes, we do.

24  Q   Have you personally been to the facility?

25  A   I have personally been to the facility.

                Blakely - Direct                 7

1  Q   I want to show you Defendant's Exhibits A and B and have

2  you take a look at those.

3       Do those two brochures, are those brochures put

4  out, published by the Glen Mills Schools?

5  A   That's correct, they are.

6  Q   And do they each contain some basic descriptions of the

7  program?

8  A   They are promotional advertisements that they gave out

9  to not only families and youth, but also Probation

10  Departments in terms of the type of services that they

11  provide.

12  Q    Do those two exhibits provide an accurate description of

13  the services provided by the school?

14  A    Yes, they do.  They are a little bit dated, I will say

15  that, but they are probably a couple years old.  There have

16  been some changes in terms of buildings, but the basic

17  program is relatively consistent, yes.

18        MR. PATTON:  Your Honor, I would move Defendant's

19  Exhibits A and B.

20        THE COURT:  A and B are admitted.

21        Is Sam Ferrainola still there at Glen Mills?  He

22  was a former Probation Officer of mine in Pittsburgh.

23        THE WITNESS:  Jim Ferrainola --

24        THE COURT:  That's his son.

25        THE WITNESS:  Well, Sam is the executive director

                  Blakely - Direct            8

1  pictured here.  The son just recently died.  Sam is there.

2        THE COURT:  Yes.  I heard that, yes.

3  BY MR. PATTON:

4   Q    As far as admissions into Glen Mills School -- well, let

5   me ask you first.  Is Glen Mills privately run or is it run

6   by the Commonwealth of Pennsylvania?

7   A    It is a private organization, yes, a nonprofit

8   organization, I believe.

9   Q    Would it be fair to characterize it as a private

10   residential treatment program?

11   A    That's correct.

12   Q    Do they have control over who is admitted into their

13   facility?

14   A    Yes.  They have admission requirements in terms of who

15   they take and they don't take.

16   Q    So, if a Juvenile Judge would like to place a juvenile

17   at Glen Mills School and recommends that, ultimately does

18   Glen Mills have the final say as to whether that juvenile is

19   admitted or not?

20   A    That's correct.

21   Q    And you had mentioned that Glen Mills is not a

22   locked-down facility.  Is that correct?

23   A    There are not locks on the door, no.

24   Q    If a juvenile chose to, is it possible for them to,

25   against the rules, walk away or leave the facility?


Blakely - Direct              9


1   A   Absolutely, yes, they could.

2   Q   Of course, if they did that, you guys would look for

3   them and they could be arrested and brought back?

4   A   An arrest warrant would follow, yes.

5   Q   At Glen Mills, are the juveniles who are placed there,

6   are they allowed to earn home visits?

7   A   Yes, they are.

8   Q   If they have behaved properly, are they allowed to

9   perhaps leave for the weekend and then come back?

10   A   The home visits at Glen Mills primarily are on major

11   holidays.  They don't -- for the most part, they do not

12   have -- they wouldn't be able to come home once a month, or

13   whatever.  It's usually the 4th of July, Christmas,

14   Thanksgiving; major holidays.

15   Q   And so the juvenile could come home for a day or a

16   couple days?

17   A   That's correct.

18   Q   And then go back?

19   A   As long as they establish a certain level within the

20  program.

21  Q    And, as the name suggests, is Glen Mills School -- I

22  mean, is it actually a school?  Do kids go to school there?

23  A    There is both educational schools that they run there as

24  well as vocational programs.

25  Q    And the actual school that -- excuse me.

Blakely - Direct              10

1        Is part of the program, does it have its own

2  academic sports teams that compete in Pennsylvania, high

3  school athletics?

4  A    Absolutely.  They have very, very successful sports

5  teams in Glen Mills.

6        THE COURT:  The Battling Bulls.

7        THE WITNESS:  That's correct.  You are very aware

8  of the program then.

9  BY MR. PATTON:

10  Q    And they travel around to different sporting events just

11  like any other high school team?

12  A    Absolutely.

13  Q    Now, I would like to talk to you a little bit about the

14   youth detention centers that are run by the Commonwealth

15   Department of Public Welfare?

16   A    Youth Development Centers?

17   Q    Yes.  Could you just explain their setup and how they

18   are used?

19   A    The youth development centers shall run by the state

20   through the Department of Public Welfare.  They are secure

21   facilities that are run within the juvenile system.  I

22   believe that there are, just a guess, seven to ten of them

23   located across the state of Pennsylvania.

24        They are secure facilities in terms of, they are

25   fenced in in terms of barbed wire.  It's a matter of

Blakely - Direct              11

1   structure within the YDC's.  Some of them are just perimeter

2   fencing and some of them are actually secure, very secure

3   facilities.

4   Q    In a YDC, there could be different levels of security

5   within the individual YDC, is that correct?

6   A    That's correct.

7   Q    What is the most secure setting that there is in the

8   YDC?

9   A   Well, it would be within the -- to give an example, the

10  closest one here would be the Youth Development Center at New

11  Castle.  There is a cottage program behind a fence and then

12  inside there, there is an internal secure facility that -- I

13  mean, every door is locked in terms of the rooms, or

14  whatever.  They would be locked in their rooms at night, and

15  whatever.

16  Q   Would it be fair to say that the -- what you just

17  described at YDC New Castle, the maximum security facility

18  within that YDC, is that as close to what people would

19  generally consider imprisonment as the Pennsylvania

20  commonwealth's juvenile justice system has?

21  A   It would be very close, yes.

22  Q   Then are Judges in the Juvenile Court system allowed to

23  place juveniles that have a history of serious delinquent

24  acts and behavioral problems directly into the maximum

25  security facilities at the YDC's?

                    Blakely - Cross               12


1   A   Absolutely.

2   Q   If the Judge feels that that is necessary for that

3    particular juvenile, they can make that placement directly

4    there?

5    A    Absolutely.

6    Q    And I believe you had said that if you read all the

7    services, the treatment services that juvenile justice system

8    has to offer, as a continuum Glen Mills would perhaps be

9    somewhere in the middle?

10    A    Yes, I would say that's a correct statement.

11    Q    And the secure YDC's would be above Glen Mills?

12    A    That would be on the far end, yes.

13    Q    And then the secure -- the maximum security facilities

14    within the YDC's are at the absolute top of the --

15    A    Yes.

16        MR. PATTON:  Those are my questions, Your Honor.

17            CROSS-EXAMINATION

18    BY MR. TRABOLD:

19    Q    Is it accurate to say that a juvenile that's sent to

20    Glen Mills is involuntarily sent there?

21    A    That is correct also.

22    Q    And what I mean by that, and just so the record is

23    clear, is that this defendant, for example, Mr. Lyons, if he

24    would have been sent by the Juvenile Court Judge in the Court

25   of Common Pleas across the street to Glen Mills, he wouldn't

Blakely - Cross                13

1   have had the ability to say, sorry, Judge, I am not going to

2   Glen Mills?

3        Or if he would have said that, then he would have

4   been subject to harsher sanctions?

5   A    That's correct, yes.

6   Q    Okay.  So, for all intents and purposes, his placement

7   at Glen Mills was an involuntary commitment to Glen Mills?

8   A    Yes.  There is a court order that is written placing

9   somebody at Glen Mills.

10   Q    And by going to Glen Mills, he's still under the

11   jurisdiction of the juvenile justice system?

12   A    He is under the jurisdiction of the Erie County Juvenile

13   Court, yes.

14   Q    And the fact that Glen Mills is a private institution

15   doesn't remove him from the jurisdiction of the Erie County

16   Juvenile Court system?

17   A    Absolutely not.

18   Q    Now, with regard to the security at Glen Mills, it's

19  very clear, I am familiar with Glen Mills, that there is no

20  locked doors or there is no fence around the facility, but a

21  juvenile at Glen Mills can't just walk out the door and walk

22  down the street?

23        What I mean by that is, they are subject, again, to

24  harsher sanctions if they do that?

25  A   The staff at Glen Mills would actively step up to

Blakely - Cross            14

1  prevent that.  If they got away from the staff at that point,

2  then it would become an arrest, the police and/or probation

3  would act on some sort of warrant, yes.

4  Q   And because of what you just explained, you would agree

5  with me that any juvenile sent to Glen Mills, his liberty is

6  significantly curtailed by the fact that they are at Glen

7  Mills?

8  A   That would be a fair statement.

9  Q   And that is true even though Glen Mills operates a

10  sports program or might have other off-site activities?

11  A   Yes.  They are still court-ordered into the program.

12        MR. TRABOLD:  Nothing further, Your Honor.

13        THE COURT:  The other end of the equation is that

14  they can't be released from Glen Mills without a court order,

15  is that correct?

16      THE WITNESS:  That is also correct.

17      THE COURT:  We have a federal facility with which

18  you may be familiar with near here called the Federal

19  Correctional Institution at FCI McKean, and they have a

20  trustee program outside the fence.  It's called -- I think

21  it's called the Forestry Camp, or words to that effect, but

22  they are inmates that have been sentenced by a Federal Court

23  somewhere and are then sent to FCI McKean.

24      After a certain amount of time, if they qualify,

25  they are allowed to go to reside at the Forestry Camp, which

15

1  is outside the fence at McKean, but they are still subject

2  to, maybe within limits, come and go also.

3      Are you familiar with that?

4      THE WITNESS:  I am not familiar really with the

5  federal system.  I have never been there.  But, there are

6  similar programs, like even the juvenile justice system, in

7  terms of people work outside the federal correctional

8  facility to do work projects.

9        THE COURT:  Everybody in prison isn't necessarily

10  behind a fence?

11        THE WITNESS:  That's correct; at least in the

12  juvenile system.

13        THE COURT:  Okay.  Thanks.

14        THE WITNESS:  Thank you.

15  (The witness is excused.)

16        MR. PATTON:  Your Honor, our argument rests on the

17  distinction made by the Sentencing Guidelines between a

18  sentence of imprisonment where someone is sent to a -- for

19  example, a facility like FCI McKean, even the camp at FCI

20  McKean, the distinction between that and someone who is sent

21  and placed in confinement at a community confinement center

22  or commonly referred to as a halfway house.

23        And, for example, in the sentencing we had this

24  morning before Mr. Lyons, we were dealing with a community

25  confinement center in Pittsburgh that the Bureau of Prisons

16

1  utilizes in placing people there for a period of time if they

2  are coming off a sentence of incarceration or just as it

3   being a condition of probation.

4       And I think what is critical to understand is even

5   if somebody -- number one, it's really beyond dispute that

6   the guidelines acknowledge that distinction that a sentence

7   to a halfway house is not a sentence to a term of

8   imprisonment for which you can get either two or three

9   criminal history points.

10       If you were sentenced to a halfway house, you can

11   only receive one criminal history point under 4A1.1(c).  And

12   that is set forth in the background commentary to 4A1.1 where

13   the guidelines state that subdivisions A, B, C of 4A1.1

14   distinguish confinement sentences longer than one year and

15   one month shorter confinement sentences of at least sixty

16   days, and all other sentences such as confinement sentences

17   of less than sixty days, probation, fines, in residency in a

18   halfway house.

19       Now, of course, being sentenced to a halfway house

20   is in a sense a sentence of confinement because you cannot

21   voluntarily leave the halfway house.  If the Court orders you

22   into a halfway house, you have to stay there.  And if you try

23   and leave without Court permission, they will issue an arrest

24  warrant for you and you will be arrested.

25      And, indeed, as I point out in our position with

17

1  respect to sentencing factors, in the Sentencing Guidelines

2  themselves, the guideline that applies to escape, you know,

3  draws distinctions in the base offense level based on if his

4  offense was from a secure facility or from a halfway house.

5      So, certainly if you get sent to what is the

6  equivalent of a halfway house -- and we are arguing that Glen

7  Mills School is more akin to a halfway house than a community

8  treatment facility -- you are definitely not free to leave

9  because the Court has ordered you to be there.

10      So, the question isn't, are you free to just get up

11  and completely leave the facility?

12      MR. PATTON:  Our argument is that if, when you

13  compare the Glen Mills Schools in the juvenile justice

14  system, that is more akin to being sentenced to a

15  treatment -- a residential treatment facility.  Indeed, as

16  Mr. Blakely described it, it is a private residential

17  treatment facility.  It's more akin to that than a sentence

18  of imprisonment where you are sentenced somewhere where you

19  are physically locked up all day and you are not -- not only

20  are you not free to leave, you physically can't leave because

21  you are locked up.

22      And as Mr. Blakely explained, for example, if a

23  juvenile would have been sent to the Youth Development Center

24  at New Castle, which is a secure facility or the maximum

25  security portion of that YDC, that definitely would be a term

18

1  of imprisonment and would count as under 4A1.2(d)(2) as a

2  sentence of to confinement.

3      The Davis case that we cite and that the government

4  has talked about, Davis dealt with the issue of what does the

5  phrase, a sentence to confinement, mean as it is used in

6  Section 4A1.2(d)(2)) when it says sentenced to confinement of

7  at least sixty days?

8      And what the Third Circuit said is, look, in trying

9  to figure out what sentence to confinement means in looking

10  at all the guidelines as a whole, we believe that the phrase,

11  or the term, sentenced to confinement, has the same meaning

12  as the term, term of imprisonment.  And they said that's what

13    we believe the Guideline Commission meant.

14        THE COURT:  I think what they were saying, without

15    saying it, they were saying this is a slip of the pen.  They

16    meant the same thing.

17        MR. PATTON:  I agree.  And I understand that Davis

18    dealt with juvenile placements at the Glen Mills School.

19    But, in the Davis case, the defendant didn't argue that a

20    placement at the Glen Mills School was more akin to a

21    residential treatment program or a halfway house.  All that

22    was argued in Davis was that a placement at Glen Mills was

23    open-ended, indeterminate and so you couldn't say for sure it

24    was a sentence of confinement to more than sixty days.

25        And the Third Circuit rejected that and said, look,

19

1    it's an indeterminate sentence.  But, under the juvenile --

2    Pennsylvania Juvenile law that confinement lasts, I believe

3    it was up to four years, which is longer than sixty days, so

4    it is a sentence of confinement that was longer than sixty

5    days.

6        But, the Court was never presented with the

7    argument and, therefore, never addressed the argument of,

8    well, is Glen Mills really like a sentence of imprisonment or

9    is it really like a halfway house?  And since the Court never

10   got presented with that argument, they couldn't decide that

11   argument.

12       And the cases from other Circuits cited by the

13   government in their case, I don't see any discussion as to

14   where a defendant argued that the actual juvenile placement

15   was in a facility that was more like a residential treatment

16   facility rather than a sentence of imprisonment.

17       We attached Judge Standish's findings in the

18   McAdoo(Sp) case where he was confronted with juvenile

19   placements, they weren't at Glen Mills, but they were in

20   other juvenile placement facilities.  We said now, look,

21   these facilities, they are not lock-down facilities.  People

22   come and go to school.  I agree that they are not a sentence

23   of imprisonment and simply the fact that you can't

24   voluntarily walk away doesn't mean that they are sentences of

25   imprisonment because, as Judge Standish pointed out, if you

20

1    get sent to a halfway house by a Court, you can't just up and

2    leave without the Court's permission.

3        And so we believe that Mr. Lyons should only

4    receive one criminal history point for his placement at Glen

5    Mills under 4A1.2(d)(2)(b).  That finding also carries into

6    that Mr. Lyons then would not receive two criminal history

7    points for committing this offense within two years of being

8    released from a term of imprisonment.

9        So, it would ultimately end up in having three

10   criminal history points taken off his criminal history score,

11   which would result in Mr. Lyons being in a criminal history

12   category of two with an offense level of twenty-five is a

13   sixty-three to seventy-eight month sentence.

14       THE COURT:  Mr. Trabold.

15       MR. TRABOLD:  Your Honor, the government's position

16   is that the case relied on by counsel in support of his

17   argument directly refutes it.  The Davis case is clear for

18   the proposition that a placement at Glen Mills School is a

19   confinement sentence under the guidelines, and to parse it

20   out and separate the facts of the case from the perceived

21   holding of the case just doesn't make any sense.

22       And I would note that, in fact, the Davis decision

23   is even harsher against Mr. Lyons' position that is made out

24  in our brief, in the sense that the Third Circuit says the

25  phrase confinement and the phrase imprisonment are the same

21

1  thing under the guidelines.

2        Well, the Third Circuit in Davis then holds that a

3  placement at Glen Mills is the same as an imprisonment

4  sentence which, I would argue, goes above and beyond a

5  confinement sentence under the guidelines.

6        But, the only other thing I would note from the

7  Davis case, because it is clear that the case stands directly

8  for the proposition that a placement at Glen Mills School is

9  a confinement sentence under the guidelines.  Otherwise, if

10  it wasn't, the Third Circuit would clearly have said this is

11  not an imprisonment sentence being placed at Glen Mills

12  School.  Therefore, even if the sentence is open-ended, it

13  really is of no consequence because open-ended or not, a

14  placement at Glen Mills is not a sentence of confinement.

15        The only other thing I would note is to note in the

16  case, the Court specifically says that the sentence means the

17  placement at Glen Mills School is counted because the

18    defendant was released from confinement within five years of

19    his commission of the instant offense.  So, they clearly said

20    that a placement at Glen Mills School is confinement.

21        Separate and apart from the Davis case, there is a

22    long laundry list of cases in our brief that indicates that

23    similar type sentences in other districts have been found to

24    be confinement.  And the Ninth Circuit specifically says, in

25    the Williams case, that the relevant inquiry is not whether a

22

1    placement into a juvenile facility is equivalent to adult

2    prison, the relevant inquiry is simply, is this a sentence of

3    confinement?  And the reason for that is, the whole purpose

4    of the juvenile system is different from the adult prison

5    system.  So, you can't say, is this apples to apples?  That's

6    not the inquiry.  You have to look at the overall picture and

7    whether it's a sentence of confinement.

8        Factually, this is clearly a sentence of

9    confinement.  Mr. Lyons was not only not allowed to leave

10    because he would have been subject to an arrest warrant and

11    harsher sanctions if he left, but defense's own witness

12    indicates quite clearly that while there aren't any locked

13  doors at the facility or any fence, had they known or had he

14  been caught in the process of leaving, the counselors or the

15  employees at Glen Mills would have taken active steps to

16  prevent him from leaving.

17        So, clearly the facility is a facility of

18  confinement.  I think though they have sports teams that are

19  allowed to go off site and all other activities, the facility

20  is a facility of confinement.  And that, you know, that not

21  only factually from the witness that testified today, but

22  because the Third Circuit specifically says it's a

23  confinement facility by virtue of the holding in the Davis

24  case.

25        Beyond that, Your Honor, again, there is a whole

23

1  laundry list of cases cited by the government in our brief

2  and there really isn't a single Circuit decision out there

3  from any Circuit in this country that agrees with the

4  position advanced by Mr. Lyons in this case.  And Judge

5  Standish's decision is really of no consequence because there

6  is no discussion anywhere in that case of the Davis decision

7    by my reading of his decision.

8         THE COURT:  Thanks, Mr. Trabold.

9         Well, I agree with the government on this one.  I

10   think that the commitment of Mr. Lyons to the Glen Mills

11   School was a sentence of confinement.  I'm quite familiar

12   with juvenile and adult facilities, having served in the

13   Juvenile Court in Allegheny County for eleven years before

14   coming here.

15        And as I said to Mr. Blakely, coincidentally

16   enough, Mr. Ferrainola, the executive director of Glen Mills,

17   is an old employee of mine at the Juvenile Court in Allegheny

18   County.

19        So, we do make that finding that the appropriate

20   level here is twenty-five and, the criminal history category

21   is Roman numeral three.  So, the applicable guideline range

22   here is seventy to eighty-seven months imprisonment,

23   supervised release of four to five years, a fine in the

24   ranges of $10,000 to $2,000,000 and a special assessment of

25   $100.00.

24

1         At this time, Mr. Patton, is there anything that

file:///A|/LYONS-2.TXT

2  you wish to say on behalf of Mr. Lyons or introduce any

3  additional testimony?

4      MR. PATTON:  Your Honor, we have no further

5  testimony.  But, as I pointed out in our position with

6  respect to sentencing factors, you have Mr. Lyons here who

7  has never served a day of imprisonment in his life.  He has

8  juvenile adjudications.  He was at Glen Mills for a while.

9  But, you know, he has a lot of disorderly conduct type stuff,

10  and just getting fined, but he has never served any term of

11  imprisonment.

12      So, I would submit to you that in this case there

13  is a five-year mandatory minimum and for an offender like

14  Mr. Lyons, five years is an extraordinarily long sentence for

15  the first sentence of imprisonment you have ever served in

16  your life, and that the sixty months is more than enough to

17  deter him from continuing to commit offenses once he comes

18  out from imprisonment because he has never had the determent

19  effect of a true term of imprisonment before.

20      I understand Your Honor has made a finding that

21  Glen Mills is the equivalent to other prisons, but there is

22  no way you can try and compare placement at Glen Mills with

23   being placed in the Federal Bureau of Prisons.

24          Five years in the BOP is enough to try and deter

25   this young man and get the message to him that he needs to

25

1   change his behavior, and that even though he been on bond,

2   had some problems while he was on bond, five years is enough.

3   It certainly is enough for general deterrence and it gives

4   him enough time to do any treatment program in the Bureau of

5   Prisons that the Bureau of Prisons believes that is

6   appropriate.

7          So, we would ask that you exercise the discretion

8   you have under Booker as you have recognized, to say that,

9   look, I understand the guidelines say seventy to eighty-seven

10   months, but in this particular case for this particular

11   defendant, sixty months is enough.

12          And we would also ask that Your Honor recommend to

13   the Bureau of Prisons that Mr. Lyons be placed at the Federal

14   Correctional Institution at McKean so that he will be close

15   to his friends and family in Erie.

16          And Mr. Lyons does not wish to make a statement.

17          THE COURT:  Mr. Trabold.

18    MR. TRABOLD:  Well, Your Honor, I don't believe

19   that a sentence of sixty months is appropriate in this case

20   given that the guidelines range is seventy to eighty-seven

21   months and given that while on bond Mr. Lyons submitted over

22   seventeen positive urine samples positive for illegal

23   substances.

24        Not only that, but Mr. Lyons was also arrested

25   while out on bond.  That behavior is not indicative to me of

26

1    somebody that is interested in, at this point in their life,

2    of rehabilitating themselves.  One or two positive urine

3    samples, you can same okay.  But, by my count, it's seventeen

4    positive were, I don't know, some were substances such as

5    marijuana, cocaine and methamphetamine.  This is not a

6    defendant in my opinion that at this point in his life that

7    he is interested right now at rehabilitating himself and,

8    therefore, you should sentence him to a sentence within the

9    guideline range.

10        THE COURT:  Well, Mr. Lyons does not have a good

11   past record even though he has not been sentenced to a prison

12  facility other than Glen Mills before this, but I see three,

13  no, four adjudications as a juvenile delinquent and then six

14  adult convictions already by age twenty.  He was only

15  nineteen on that fifth one.  So, it is not a good record and

16  I think that a sentence within the guidelines is appropriate

17  here.

18          Mr. Patton, is there any reason that sentence

19  should not be imposed at this time?

20          MR. PATTON:  No, sir.

21          THE COURT:  Mr. Lyons?

22          MR. LYONS:  No.

23          THE COURT:  Mr. Trabold?

24          MR. TRABOLD:  No, Your Honor.

25          THE COURT:  It is the judgment of the Court that

27

1  the defendant, Jawuan Dupree Lyons, is committed to the

2  Bureau of Prisons for a term of seventy months.

3          Upon release from imprisonment, the defendant shall

4  be placed on supervised release for a term of four years.

5  Within seventy-two hours of release from the custody of the

6  Bureau of Prisons, the defendant shall report in person to

7    the Probation Office in the district to which he is released.

8        While on supervised released, the defendant shall

9    not commit another federal, state or local crime, shall

10    comply with the standard conditions that have been

11    recommended by the Sentencing Commission and adopted by this

12    Court and shall also comply with the following additional

13    conditions:

14        The defendant shall not illegally possess a

15    controlled substance.  The defendant shall not possess a

16    firearm or destructive device.  The defendant shall

17    participate in a program of testing and, if necessary,

18    treatment for substance abuse as directed by the Probation

19    Officer until such time as the defendant is released from the

20    program by the Probation Officer.

21        Further, the defendant shall be required to

22    contribute to the costs of services for any such treatment in

23    an amount determined by the Probation Officer but not to

24    exceed the actual costs.  The defendant shall submit to one

25    drug urinalysis within fifteen days after being placed on

28

1    supervised release and at least two periodic tests

2    thereafter.

3        It is further ordered that the defendant shall pay

4    to the United States a special assessment of $100.00, which

5    shall be paid to the U.S. District Court Clerk forthwith.

6        The Court finds that the defendant does not have

7    the ability to pay a fine in this case. The Court will waive

8    the fine in this case.

9        The sentence here of seventy months, we believe,

10   followed by a period of four years of supervised release will

11   adequately address the sentencing objectives of individual

12   and general deterrence and punishment as well as protection

13   of the community.

14        Mr. Lyons, you apparently have a drug problem and

15   you're young. I hope you will be able to get turned around

16   while you are serving time, and I will recommend that you be

17   enrolled in any kind of a drug rehabilitation program that

18   they have. And I will recommend that you be placed at

19   McKean, although that's only a recommendation from the Court.

20   I don't order the Bureau of Prisons where to send somebody,

21   but I will recommend McKean and hopefully you will work your

22   way out to that outside camp that I mentioned earlier when

23  Mr. Blakely was testifying.

24      I don't think there are any counts here to be

25  dismissed.


29


1       MR. TRABOLD:  Correct, Your Honor.

2       MR. PATTON:  Your Honor, appeal rights.

3       THE COURT:  Oh, thank you.

4       Mr. Lyons, you do have a right to appeal.  An

5  appeal must be filed within ten days.  You are entitled to a

6  lawyer at every stage of the proceedings.  If you cannot

7  afford an attorney, one will be provided for you without

8  charge.

9  (Court adjourned on Wednesday, October 5, 2005,

10  at 10:45 a.m.)

11

12              * * * * *

13      I certify that the forgoing is a correct transcript

14  from the record of proceedings in the above-entitled matter.

15

16              S/Michael D. Powers
                Michael D. Powers

17                        Official Reporter

18        *****NOT CERTIFIED WITHOUT ORIGINAL SIGNATURE*****

19

20

21

22

23

24

25